IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 2:18-cr-36 |
| ZANABA MANET, | |
| Defendant. | |

## ORDER

This matter is before the Court on the Government's Petition, seeking revocation of Defendant Zanaba Manet's release pending sentencing in this matter. Doc. 94. For the reasons set forth below, and the reasons stated during the March 25, 2019 Bond Violation Hearing in this matter, Ms. Manet's release pending sentencing has been and remains **REVOKED** and Ms. Manet is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility pending sentencing in this case.

Ms. Manet was charged by indictment in this matter with two counts: (Count One) possession with intent to distribute heroin; and (Count Two) interstate travel. Doc. 1. Ms. Manet was released on bonding pending trial, subject to certain conditions, including that her travel be restricted to the Southern District of Florida and the Southern District of Georgia. Docs. 6, 37. On March 8, 2019, Ms. Manet appeared before the Honorable Lisa Godbey Wood in this matter and entered a guilty plea to Count One. Doc. 89. At the change-of-plea hearing, Ms. Manet asked to remain on bond, subject to the same conditions, pending sentencing. Judge Wood permitted Ms. Manet to remain on bond, but directed the United States Probation Office ("USPO") to provide a report within one week as to Ms. Manet's compliance with her bond conditions. On March 15, 2019, the USPO filed its Petition seeking revocation of Ms. Manet's release pending sentencing. Doc. 94. In the Petition, the USPO alleges that Ms. Manet violated the conditions of her release by traveling to California during the week of March 11, 2019 without first obtaining court approval for the travel. The Court issued a warrant for Ms. Manet's arrest based on the Petition. Doc. 96.

Ms. Manet was arrested on March 18, 2019 in the Southern District of Florida following her return from California pursuant to the warrant issued by this Court. Id. Defendant appeared before in Court in the Southern District of Florida for her initial appearance, and was ordered to appear in Court in the Southern District of Georgia for her Bond Violation Hearing. Doc. 98. The Court held a Bond Violation Hearing on March 25, 2019.

At the Bond Violation Hearing, the Government asked the Court to revoke Ms. Manet's release and requested that Ms. Manet be detained pending sentencing. Ms. Manet opposed the Government's request and asked that she be allowed to remain on bond pending sentencing. Ms. Manet argued that she mistakenly thought she had permission to travel to California, and, in any case, she informed her supervising probation officer of her travel plans before flying to California. Three witnesses testified at the Bond Violation Hearing: United States Probation Officer Nora Heredia-Burgos (Ms. Manet's supervising probation officer in the Southern District of Florida); United States Probation Officer Fonda Dixon (Ms. Manet's supervising probation officer in the Southern District of Georgia); and Ms. Manet. Doc. 100. All witnesses were subject to cross-examination. The parties additionally submitted the following documentary evidence: forms showing Ms. Manet's travel was restricted as a condition of her release and showing that Ms. Manet received and acknowledged instructions on that condition; an email chain between Ms. Manet and her former counsel in this case; and purported screen shots of text messages Ms. Manet claimed she sent or received. Doc. 101. Additionally, Ms. Manet made a statement to the Court.

As explained during the Bond Violation Hearing, Ms. Manet's detention status following the entry of her guilty plea is governed by 18 U.S.C. § 3143. Under that provision, and in light of Ms. Manet's guilty plea to Count One, Ms. Manet would be subject to detention pending sentencing unless the Court finds by clear and convincing evidence that Ms. Manet is not likely to flee or pose a danger. 18 U.S.C. § 3143(a)(2). Additionally, Ms. Manet would have to

demonstrate "there is a substantial likelihood that a motion for acquittal or new trial will be granted," or that the Government recommends "that no sentence of imprisonment be imposed." Id.  Furthermore, because the Government seeks revocation of Ms. Manet's release pending sentencing, Ms. Manet's release should be revoked and she should be detained if there is clear and convincing evidence that she violated the conditions of her release and the Court finds that she should be detained under the factors in 18 U.S.C. § 3142(g) or finds that she is unlikely to abide by conditions going forward.  18 U.S.C. § 3148(b).

Under § 3143 and § 3148, I find that revocation of Ms. Manet's release and detention pending sentencing is appropriate.  During the Bond Violation Hearing, the Government offered testimony and evidence demonstrating that Ms. Manet clearly understood she was required to obtain Court approval in writing before traveling outside of the Southern District of Florida or the Southern District of Georgia.  Indeed, Ms. Manet was informed multiple times that she had to receive written Court approval to travel, and she confirmed her understanding of this condition on various forms the USPO required her to execute.  Officer Dixon testified that she had a conversation with Ms. Manet in September 2018 where she discussed the travel restriction with Ms. Manet and explained to Ms. Manet that any requests to travel needed to be specific as to dates and locations of the requested travel.  Officer Dixon confirmed that Ms. Manet understood the travel restriction and how to go about seeking approval to travel.  This conclusion—that Ms. Manet understood the restriction and the need to obtain written Court approval in advance—is further supported by the fact that Ms. Manet sought and obtained Court approval to travel to California from February 10–13, 2019 in order to resolve traffic tickets.[1]  Docs. 53, 55.

---

[1] Ms. Manet claimed at the hearing that her travel to California in March was also to resolve travel tickets.  However, at the Bond Revocation Hearing, Ms. Manet explained that she was not required to attend any hearing or appear in court in California for the tickets.  Ms. Manet offered no other explanation for her need to travel to California to resolve the tickets and offered no documentary evidence concerning her efforts to resolve the tickets.

3

At the Bond Revocation Hearing, Ms. Manet offered various excuses for her violation of the travel restriction, but none of the excuses were persuasive or credible. Ms. Manet claimed she believed she was allowed to travel to California in March because the Court had authorized her to travel there in February. In support, she stated that she canceled the trip in February because her attorney failed to notify her that her request to travel had been approved until just before the trip was to occur. This assertion is not supported by the record. Ms. Manet's motion for travel was filed on February 7, 2019 and asked for permission to travel from February 10, 2019 to February 13, 2019. Doc. 53. The Court granted Ms. Manet's request on February 8, 2018. Doc. 55. It is not credible that delayed notice from her counsel caused Ms. Manet to cancel her February trip to California.

Setting that issue aside, Ms. Manet claimed that her former counsel led her to believe was still authorized to travel to California in March because the Court had previously authorized her to travel for specific dates in February. In support, Ms. Manet offered on an email exchange with her former counsel, in which Ms. Manet's former counsel informed her that the Court's previous order "technically" only authorized her to travel from February 10–13, 2019, and advised Ms. Manet to keep her counsel and supervising probation officer informed as to her whereabouts.[2] Doc. 101-3. Ms. Manet claims she relied on this email in assuming she could travel without additional Court approval. While this email exchange might have created some confusion on Ms. Manet's part regarding the effect of the February 8, 2019 Order, it does not

---

[2] The email Ms. Manet relies on was sent by Ms. Adrienne Browning on February 17, 2019. Doc. 101-3. Ms. Browning was appointed to represent Ms. Manet at the outset of this case. Doc. 10. On February 7, 2019, Ms. Browning filed a motion to withdraw as Ms. Manet's counsel stating "Defendant wishes to fire Counsel . . . ." Doc. 54. On February 15, 2019, after conducting an attorney-inquiry hearing, the Court granted the motion to withdraw, discharged Ms. Browning, and appointing new counsel to represent Ms. Manet. Docs. 58, 59. Therefore, on February 17, 2019—the date of the email exchange Ms. Manet relies upon—Ms. Browning was no longer Ms. Manet's counsel. The email exchange demonstrates that Ms. Manet knew that she was no longer represented by Ms. Browning at this time and that the Court had appointed Ms. Manet new counsel.

4

excuse Ms. Manet's violation of the conditions of her release.  The email does not contradict the travel restriction and, in fact, directs Ms. Manet to communicate about her travel with her new attorney and supervising probation officer.  More importantly, it was Ms. Manet's obligation to ensure that she complied with the conditions of her release.  If there was any confusion, she needed to resolve it before traveling to California.  In any case, as explained below, Ms. Manet did not follow the advice in the email as she did not inform her supervising probation officer or her new counsel about her whereabouts or her travel plans.

Ms. Manet also claimed that she informed her supervising probation officer in Florida, Officer Heredia-Burgos, prior to travelling to California, but that claim is not credible. Specifically, Ms. Manet stated that she sent a text message Officer Heredia-Burgos on Friday, March 8, 2019 at 7:17 p.m. informing the probation officer that she had booked travel arrangements to California from March 11–13, 2019.[3]  However, when questioned about the text message, Officer Heredia-Burgos stated that although she had received other text messages (both before and after the March 8, 2019 message) she never received the message Ms. Manet claims to have sent on March 8, 2019.

Ms. Manet produced a paper copy of the purported text message at the hearing, but testimony about the message raised serious concerns about its authenticity, and whether the message was actually sent.  Doc. 101-4.  In advance of the Bond Revocation Hearing, Ms. Manet's counsel requested and was granted permission for Ms. Manet to bring her cell phone into the courtroom.  During cross-examination of Ms. Manet, counsel for the Government asked

---

[3]   Ms. Manet's testimony regarding when she booked her California travel was not consistent or credible.  She initially said she could not remember when she booked her plane ticket.  Then she said it was booked on, perhaps, March 10, 2019.  The text message Ms. Manet relies on states that her travel was booked as early as March 8, 2019, doc. 101-4, and the email exchange with Ms. Browning states that Ms. Manet "changed her ticket date" as early as February 17, 2019.  Despite the relatively short time during which these events occurred (February to March 2019) and the fact that on March 8, 2019 Ms. Manet pleaded guilty to a felony in this Court and asked to continue on bond subject to conditions, it is very unlikely that Ms. Manet cannot recall when she booked a plane ticket to travel across the country.

Ms. Manet to access her cell phone and display the disputed text message in the messaging application on the phone.  Ms. Manet accessed a phone that she brought to the hearing and showed counsel for the Government an image on the screen.  During an exchange that followed, it became clear that the phone did not belong to Ms. Manet, but instead belonged to a family member seated in the gallery, and the image on the screen was not the message as it appeared in the text-messaging application, but was the same screenshot image that was provided to the Court.  When questioned further by the Government, Ms. Manet claimed that she sent the screenshot to her family member at the time of the communication[4] and she sent a screenshot of the message to her attorney on the morning of the hearing, but that she could not access the messaging application on her own phone because the phone was "dead" and she decided to not bring the phone to the courthouse.  Ms. Manet offered no explanation as to why Officer Heredia-Burgos would have received text messages from Ms. Manet both before and after the purported March 8, 2019 text message, but then would not receive the one message Ms. Manet relied upon.  Ultimately, I find Ms. Manet has not proven that she sent the March 8, 2019 to Officer Heredia-Burgos that she claims to have sent.

In consideration of all facts and arguments, I found that Ms. Manet's release was due to be revoked, should remain revoked, and she should be detained pending sentencing in this case.  Specifically, Ms. Manet failed to carry her burden of establishing by clear and convincing evidence that she will not flee or pose a danger to any other person or to the community.  See 18 U.S.C. § 3143(a); Fed. R. Crim. P. 32.1(a)(6).  Ms. Manet has not shown "there is a substantial likelihood that a motion for acquittal or new trial will be granted," and the Government has not recommended "that no sentence of imprisonment be imposed."  Id.  Furthermore, I find that Ms.

---

[4]   Ms. Manet claimed she sent screenshots of messages with her probation officer to the family member because that individual was serving as a surety on Ms. Manet's bond.

Manet's release pending sentencing should be revoked under 18 U.S.C. § 3148(b) because she there is clear and convincing evidence that she violated the travel restriction condition of her release and the evidence demonstrates that she is unlikely to abide by conditions going forward. Even if I were not to find otherwise regarding the likelihood that she will abide by conditions going forward, I would still find that Ms. Manet's release should be revoked and she should be detained under the factors in 18 U.S.C. § 3142(g).  18 U.S.C. § 3148(b).  Accordingly, Ms. Manet is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility.  Ms. Manet shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver Ms. Manet to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED**, this 1st day of April, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

7