IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 218-036 |
| | ) | |
| ZANABA R. MANET | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SENTENCE REDUCTION**

Defendant Zanaba R. Manet requests that this Court reduce her sentence; however, it is unclear whether she is requesting a reduction under 18 U.S.C. § 3582(c) or for compassionate release based upon the recently passed First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). (Doc. 122.) Either way, this Court should deny the request. First, there is no vehicle under § 3852(c) by which Manet can obtain a sentence reduction. Second, as to compassionate release, Manet fails to demonstrate she exhausted her administrative remedies or to present circumstances justifying such extraordinary relief. Therefore, the United States respectfully requests that this Court deny Manet's motion.

**Factual Background**

A grand jury indicted Zanaba Manet with possessing with intent to distribute 100 grams or more of heroine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One) and interstate travel in furtherance of a drug offense, in violation of 18 U.S.C. § 1952(a)(3) (Count Two). (PSR ¶ 1.) At the time she was charged, Count One carried a range of punishment of not less than five years' imprisonment, not more

than 40 years' imprisonment, a fine of not more than $5 million, and not less than four years' supervise release.  *See* 21 U.S.C. § 841(b)(1)(B)(i).  Count Two had a range of punishment of not more than five years' imprisonment.  *See* 18 U.S.C. § 1952(a)(3)(A).  The court released Manet on bond.  (Doc. 37.)

Manet entered into a written plea agreement with the government, agreeing to plead guilty to the lesser-included charge under Count One, that is, possession with intent to distribute some heroin.  (Doc. 90.)  By pleading to the lesser-included charge, Manet was no longer subject to a mandatory minimum, the maximum possible sentence was now 20 years' imprisonment, and her minimum term of supervision was three years.  (Doc. 90; PSR ¶¶ 64, 66.)  *See* 21 U.S.C. § 841(b)(1)(C).  She pled guilty before the district court on March 8, 2019.  (Doc. 89.)

After Manet pled guilty, though, the probation office moved for show cause regarding her bond because she traveled to California without first obtaining court approval.  (Docs. 94, 99, 102.)  The court issued a warrant, and on March 18, 2019, Manet was found and arrested in the Southern District of Florida.  (Doc. 102.)  At the hearing, after receiving evidence from both sides, the court found that Manet did not meet her burden (Docs. 99, 102.)  Noteably, the court detailed how Manet's explanations for her unauthorized travel were not credible, including an effort on her part, while testifying, to demonstrate that she had informed her probation officer of her travel plans.  (Doc. 102 at 5-6.)  Not only did the probation officer contradict this claim, on cross-examination Manet eventually admitted that the phone she was using as proof was not actually hers (it belonged to a member of the gallery), and the text

message she was attempting to utilize was actually a picture, not the actual message. (Doc. 102 at 5-6.) The Court found that Manet was "unlikely to abide by conditions going forward," revoked her bond, and remanded her to the custody of the Marshal's Service. (Docs. 99, 102.)

After her bond was revoked, Manet attempted several times to obtain release, even if temporarily, from custody. (Docs. 103, 108.) The court denied those requests. (Docs. 105, 113.) Prior to sentencing, Manet even moved for a sentence reduction based on substantial assistance, despite the government's opposition. (Docs. 110, 111.) In her motion, she acknowledged that the reason the government no longer supported the downward departure was because of her obstructive conduct at the bond revocation hearing. (Doc. 110 at 3.)

A presentence investigation report (PSR) was completed and determined a base offense level of 24 under U.S.S.G. § 2D1.1 applied. (PSR ¶ 24.) She received a two-level reduction under the safety valve, § 5C1.2. (PSR ¶ 25.) However, based on her conduct at the show cause hearing, not only did she receive a two-level enhancement for obstruction of justice, she also lost all credit for acceptance of responsibility. (PSR ¶¶ 21-22, 28, 31.) With a total offense level of 24, and a criminal history category of I, Manet's advisory guideline range was 51 to 63 months. (PSR ¶ 64.)

On June 28, 2019, the court held Manet's sentencing hearing. (Doc. 113.) It denied her request to receive acceptance of responsibility, as well as her downward departure motion. (Doc. 113.) The court adopted the PSR and sentenced Manet to

the low-end of the advisory range, 51 months' imprisonment, followed by three years' supervised release. (Docs. 113, 118.)

On December 11, 2019, the district court received a letter from Manet requesting home detention. (Doc. 122.) She claimed she had been on bond for almost two years and "never got into trouble," although she did not mention her revocation. (Doc. 122 at 1.) Manet asserts that her 15 and 14 year-old boys are "mentally challenged and have been diagnosed with ADHD, autism, and bi-polar." (Doc. 122 at 1.) She states that since she has been in jail, her "sons have been very hard to deal with and have been given more counseling and treatment. They have been feeling more depressed, angry, and emotional." (Doc. 122 at 1.)

Manet is currently incarcerated at Tallahassee FCI in Tallahassee, Florida with a projected release date of October 18, 2022.

## Legal Analysis

I. **Section 3582(c) does not authorize the Court to reduce Manet's sentence.**

First, to the extent that Manet is asking this Court to either modify its original judgment, or otherwise reduce her sentence, 18 U.S.C. § 3582(c) and Federal Rule of Criminal Procedure 35 are the only methods, in this particular case, by which the Court could possible modify its already imposed sentence.[1] The exceptions for

---

[1] The legal avenues by which a court may modify a final judgment are narrow and rare. *See United States v. Stossel*, 348 F.3d 1320, 1321-22 & n.2 (11th Cir. 2003) (discussing statutes and rules authorizing modification).

modifying a judgment are extremely narrow, and Manet meets none of them here.[2] *See* 18 U.S.C. §§ 3582(b), (c)(1)(B) & (c)(2); Fed. R. Crim. P. 35; *United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010) ("The authority of a district court to modify an imprisonment sentence is narrowly limited by statute."). She also fails to cite any federal statute, case, or rule of criminal procedure that would allow this Court to reduce her sentence. As such, this Court is without jurisdiction to modify Manet's sentence under § 3582(c). *See United States v. Castra*, 152 F. App'x 777, 781 (11th Cir. 2005) (discussing limited circumstances in which district court may modify sentence).

II. **Manet fails to meet the requirements for compassionate release under the First Step Act.**

   A. *Statutory Background*

To the extent Manet is moving for compassionate release under the First Step Act, her request still fails. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

---

[2] For example, the Bureau of Prisons has not filed a motion asking for a reduction due to Manet's age and circumstances, *see* 18 U.S.C. § 3582(c)(1)(A), the government has not filed a Rule 35 motion, *see id.* § 3582(c)(1)(B), and Manet's advisory Guideline range has not been lowered again by a retroactive amendment, *see id.* § 3582(c)(2). The time limit for correcting the sentence due to "arithmetical, technical, or other clear error" has passed. *See* Fed. R. Crim. P. 35(a).

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." The relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[3]

---

[3] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by BOP. The First Step Act added authority for an inmate himself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release.  *See United States v. Wilkes*, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." (internal quotation marks omitted)).  The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

---

presenting a request to the warden, whichever is earlier.

Under the law, the inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon,* 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

There is no right to counsel with respect to a motion for compassionate release under 18 U.S.C. § 3582(c).  *See United States v. Webb*, 565 F.3d 789, 794 (11th Cir. 2009) (holding there is no constitutional right to counsel under similar § 3582(c)(2) proceeding requesting sentence reduction).

(A)   Medical Condition of the Defendant.—

  (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii)   The defendant is—

    (I)   suffering from a serious physical or medical condition,

    (II)   suffering from a serious functional or cognitive impairment, or

    (III)   experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.—

  (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), BOP promulgated Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended effective January 17, 2019, to set forth its evaluation criteria.

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See United States v. Heromin*, No. 11-550, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, No. 15-3764, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

### B. *Manet did not demonstrate that she first exhausted her administrative remedies and she fails to allege qualifying medical conditions.*

Manet mostly contends she should receive a reduced sentence because her two sons have mental issues which have increased since her incarceration. Her request for compassionate release should be denied because she has not established she has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on her behalf or that 30 days has lapsed from the receipt of such a request by the warden of Manet's facility. *See United States v. Dowlings*, No. CR 413-171, 2019 WL 4803280, at *1 (S.D. Ga. Sept. 30, 2019) ("Defendant has not shown that he requested compassionate release from the Bureau of Prisons or exhausted his administrative remedies."). Moreover, the statute and the Guidelines commentary make clear that compassionate release for extraordinary and compelling reasons is limited to medical, elderly or family circumstances. Because Manet failed to

demonstrate an exhaustion of administrative remedies or to allege any qualifying medical reasons, this Court should deny her motion.

As noted above, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow a court, upon a motion of the Director of BOP or the defendant, to modify a term of imprisonment if it finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Title 28, United States Code, Section 994(t) provides the authority for the Sentencing Commission to define the meaning of "extraordinary and compelling reasons" under § 3582(c)(1)(A). Section 994(t) explicitly states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." U.S.S.G. § 1B1.13, application note 1, defines "extraordinary and compelling reasons" to encompass three categories: (1) medical condition of the defendant, (2) age of the defendant, (3) family circumstances.

A fourth category, "other reasons" is left specifically to the determination of the Director of BOP. *See* U.S.S.G. § 1B1.13, app. n. 1(D). As such, under the plain language of § 1B1.13, the district court is without authority to determine "other extraordinary and compelling reasons" outside of the situations in application note 1 (A) through (C). However, recognizing the discretion given to BOP under subsection (D), the court also may look to the grounds set forth in the relevant BOP regulation governing compassionate release, which appears at Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, amended

10

effective January 17, 2019 in response to the First Step Act.[4] *See United States v. Lynn*, No. , 2019 WL 3805349, at *3 (S.D. Ala. Aug. 13, 2019) (disagreeing that under the First Step Act, court may include, under U.S.S.G. § 1B1.13, app. n.1(D), additional extraordinary and compelling reasons apart from BOP's determination). While BOP's regulations may provide more detail regarding implementation of the grounds contained in application note 1 (A) through (C), they still limit "extraordinary or compelling circumstances" to specific medical circumstances, elderly inmates (either 70 years old with 30 years or more of service, or 65 years old with qualifying medical conditions), death or incapacitation of the family member caregiver, or incapacitation of a spouse or registered partner. *See* PS 5050.50 at 3-12.

Manet, who has the burden to justify release, alleges no medical conditions in support, let alone qualifying medical conditions. She does not claim that she is suffering from a terminal illness. *See* § 1B1.13, app. n.1(a)(i). Nor does she establish that she is suffering from a serious physical medical condition, a serious functional or cognitive impairment, or is experiencing deteriorating physical or mental health because of the aging process, any of which substantially diminish her ability to provide self-care within the environment of the correctional facility and from which she is not expected to recover. *See* § 1B1.13, app. n.1(A)(ii). Manet does not qualify under § 1B1.13(B) because she is not 65 years old. (PSR at 2.)

More specifically, as to the complaints in her letter, she does not provide evidence regarding the death or the incapacitation of the caregiver of her minor

---

[4] Hereafter referred to as "PS 5050.50."

11

children, or that she would be the only available caregiver for an incapacitated spouse or registered partner. *See* § 1B1.13, app. n.1(C)(i)-(ii).  Finally, none of her stated reasons are extraordinary or compelling under BOP's regulations. *See* PS 5050.50 at 3-19.

Instead, under the auspices of the compassionate release statute, Manet attempts to relitigate her sentence in order to argue for a sentence reduction.  But her failure to allege a qualifying medical condition is fatal to her claim. *See United States v. Bryant*, No. 497-182 (S.D. Ga. Oct. 2, 2019) (order denying motion for compassionate release based on reasons stated in government's response, including that defendant failed to allege qualifying medical condition).  Therefore, this Court is without jurisdiction to reduce Manet's sentence under § 3582(c)(1)(A) and § 1B1.13, and her motion should be denied.

In any case, compassionate release under the First Step Act is still discretionary and Manet has not remotely demonstrated extraordinary and compelling circumstances. *See United States v. Willingham*, CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019)  While the PSR notes the existence of Manet's children, it says nothing about them having mental impairments. (PSR ¶ 46.)  She provides no documentation supporting her claims.  Finally, the fact is, Manet's own actions are what led her to this place.  Instead of thinking of her children, she chose to participate in drug distribution.  She decided to obstruct justice and deny responsibility at the show cause hearing, costing her an additional five-levels and 21-months in her guideline calculations.  Where before, apparently, she did not consider

the effect of her actions on her children, they are now a convenient prop to plead for a lesser-sentence. None of Manet's claims rise to the level of extraordinary and compelling and her request should be denied.

## Conclusion

For the foregoing reasons, the United States respectfully requests that Defendant's motion for compassionate release (Doc. 122) be denied.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Justin G. Davids*
Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661

P.O. Box 8970
Savannah, Georgia 31412
(912) 652-4422

# **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court. Additionally, a copy has been mailed to:

Zanaba R. Manet, Reg. No. 17628-104
FCI Tallahassee
Federal Correctional Institution
Inmate Legal Mail
P.O. Box 5000
Tallahassee, Florida 32301

This December 12, 2019.

    Respectfully submitted,

    BOBBY L. CHRISTINE
    UNITED STATES ATTORNEY

    ***/s/ Justin G. Davids***
    Justin G. Davids
    Assistant United States Attorney
    Missouri Bar No. 57661

Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422